# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DEREK HANNEMANN,

      Plaintiff,

   v.

                             Case No. 09 C 1055

SOUTHERN DOOR COUNTY SCHOOL DISTRICT,
and JOE INNIS, LOIS MAHAFFEY,

in their individual capacities,

      Defendants.
_____

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____

Derek Hannemann, Plaintiff,

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone:        (608) 283-6001
Facsimile:    (608) 283-0945
E-mail:       jsolson@scofflaw.com

1

# Table of Contents

FACTUAL BACKGROUND ................................................................................. 4

LEGAL ANALYSIS ........................................................................................ 8

   I.   Standard Of Review. ...................................................................... 8

      A.   The Defendants bear the burden of clearly explaining the basis of their motion. ............................................................................................................ 9

      B.   The Defendants fail to cite to any proposed facts in their brief, and therefore no facts from their brief should be considered. ................... 10

      C.   The Defendants improperly proposed findings of fact which were based on a lay-witness's testimony as to legal conclusions. ............................... 11

      D.   The Defendants may not introduce any new facts or arguments in their reply brief. ................................................................................................... 12

   II.   The Defendants' only arguments as to the suspension not violating Plaintiff Hannemann's due process rights are irrelevant. .......................................... 12

   III.   The Defendants do not meaningfully argue that the expulsion and ban did not violate Plaintiff Hannemann's right to intrastate travel. ..................... 13

   IV.   The Defendants argue that Plaintiff Hannemann did not have a constitutional right to access school grounds, but only cite case law regarding mere "members of the public." ...................................................................... 15

      A.   Plaintiff Hannemann, as a student, had a constitutional right to access school grounds. ............................................................................................ 15

      B.   Plaintiff Hannemann had a continued liberty interest in access to school grounds after his expulsion was reversed by the State Superintendent. ............ 17

   V.   Plaintiff Hannemann's liberty interests were implicated by his suspension, expulsion, and ban. ...................................................................................... 20

   VI.   There are no constitutionally adequate post-deprivation remedies for an expulsion or a ban. ................................................................................ 21

   VII.   The District is an Appropriate Defendant. .......................................... 25

   VIII.   Qualified Immunity Does Not Bar Any Individual Capacity Claims. ........ 27

   IX.   Qualified Immunity is not a Defense to Claims for Injunctive Relief. ............... 30

Conclusion .................................................................................................. 31

Case 1:09-cv-01055-WCG    Filed 02/21/11    Page 3 of 32    Document 34

## FACTUAL BACKGROUND

Many of the facts cited by the Defendants are undisputed and are incorporated where appropriate within the brief. Plaintiff Hannemann offers a few additional facts here by way of clarification and as necessary for the denial of the Defendants' motion for summary judgment.

There were two expulsions, the "temporary expulsion" and the "re-expulsion. There was the first (temporary) expulsion, which followed the suspension and was implemented after a School Board hearing on May 22, 2006. (PPFOF ¶¶ 5-8.) The first expulsion lasted for about three weeks, through the remainder of that school year, and Plaintiff Hannemann was to be readmitted in the fall of 2006, subject to a conditional reinstatement order, which stated, in part, that Plaintiff Hannemann could not have any further instances of gross misconduct. (Plaintiff's Responses to DPFOF ¶¶ 15-17.) However, even during those several weeks, the Board allowed Plaintiff Hannemann to continue lifting weights on campus. (PPFOF ¶ 9.)

Plaintiff Hannemann began attending school regularly again in the fall of 2006. (PPFOF ¶ 10.) Towards the end of the 2006-07 school year, in May of 2007, Mr. Hannemann was expelled a second time, until the age of 21. (PPFOF ¶¶ 11, 20-24.) On May 4, 2007, Plaintiff Hannemann, his parents, his attorney, Administrator Innis, Mr.

4

Bousley, and Ms. Mahaffey met to discuss Plaintiff Hannemann's situation and his possible expulsion. (PPFOF ¶ 12; Plaintiff's Responses to DPFOF ¶ 30.)

On May 7, 2007, Plaintiff Hannemann's attorney, Mr. Kase, learned that a radio station (WDOR) aired a news story reporting that the Southern Door District was going to have a School Board meeting regarding an expulsion of a student. (PPFOF ¶¶ 13-14.) Attorney Kase phoned Mr. Innis and asked if the school board meeting being held that night had Plaintiff Hannemann's expulsion on the agenda. (PPFOF ¶ 15.) Mr. Innis informed Attorney Kase that the school board meeting did not have Derek's expulsion on the agenda that night; and that the meeting was about another student. (PPFOF ¶¶ 16-17.) As a consequence, neither Plaintiff Hannemann, nor his family, nor his attorney attended the school board meeting on May 7th. (PPFOF ¶¶ 18-19.)

However, at that May 7th school board meeting, Mr. Innis, Ms. Mahaffey, and Mr. Bousley informed the District that they believed Plaintiff Hannemann had continuing problems with his temper and that he was exhibiting threatening behavior. (PPFOF ¶ 20; Plaintiff's Responses to DPFOF ¶¶ 36-37.) These "continuing problems" were some combination of the fact that Plaintiff Hannemann's backpack was inscribed with the statement, "Only one bullet left, no one to kill but myself," (Plaintiff's Responses to DPFOF ¶ 18); the fact that Mr. Bousley described Plaintiff Hannemann's behavior as intimidating when Plaintiff Hannemann asked Mr. Bousley where his notebooks were (Plaintiff's Responses to DPFOF ¶¶ 25-26); and the fact that Plaintiff Hannemann grabbed a student by the collar and said, "I am going to kick your ass. Stop writing in my locker." (Plaintiff's Responses to DPFOF ¶ 28). However, the

5

Hannemanns were merely informed that Plaintiff Hannemann had violated his reinstatement order by having further incidents of "gross misconduct." (PPFOF ¶ 25.) It was never made clear which exact incident or incidents were the driving force behind the May, 2007, expulsion. (PPFOF ¶ 26; Plaintiff's Responses to DPFOF ¶¶ 35-41.) Plaintiff Hannemann's parents were simply advised by letter that the District had decided to enforce permanent expulsion. (Plaintiff's Responses to DPFOF ¶ 41.)

Expelled from the schools of the Defendant District, Plaintiff Hannemann began attending school at Fox Valley Lutheran, in Appleton, Wisconsin. (PPFOF ¶ 27.) On November 5, 2007, Plaintiff Hannemann's expulsion from Southern Door County School District was reversed by Wisconsin State Superintendent Elizabeth Burmaster on the ground that the Hannemanns had not received constitutionally adequate notice of the allegations upon which the proposed expulsion was based. (PPFOF ¶ 28.) After Plaintiff Hannemann's expulsion was reversed by the State Superintendent, the attorney for the District sent the Hannemanns' attorney, Carol Gapen, a letter that stated that the District was going to appeal the Superintendents' decision if the Hannemanns were going to send Plaintiff Hannemann back to school there. (PPFOF ¶ 29.) So, Plaintiff Hannemann's parents decided that they would not attempt to reenroll him in the Defendant District, but just keep Plaintiff Hannemann at Fox Valley. (PPFOF ¶¶ 30-32.) However, since Plaintiff Hannemann was allowed on the Defendant District's campus again, he began lifting weights at Southern Door High School as he had in the past. (PPFOF ¶¶ 9, 33-34.)

6

Approximately four months later, in March of 2008, the Defendant District's attorney phoned Plaintiff Hannemann's parents and informed them that their son was not allowed to come to the school to lift weights, and that he was actually not allowed to be on school property anymore, permanently. (PPFOF ¶ 35-36.) On March 28, 2008, the Hannemanns got a letter from the District stating that Plaintiff Hannemann was, "no longer to enter upon the property of Southern Door School District for any purpose effective immediately. This includes parking lots, athletic fields, school buildings and any other facility owned by the Southern Door School District." (PPFOF ¶ 37.) The letter further stated that "any entry by [Plaintiff Hannemann] upon any property of the Southern Door School District will hereafter be considered a trespass and will be prosecuted accordingly." (PPFOF ¶ 37.) The letter closed by saying, "We will be submitting a copy of this letter to the Door County Sheriff's Department and advising them of this action."' (PPFOF ¶ 37.)

At no time prior to the total ban were the Hannemanns given notice that the School District was considering imposing a permanent ban of Plaintiff Hannemann coming onto school property for any reason. (PPFOF ¶ 38.) At no time before the ban became final were the Hannemanns given an opportunity to be heard on the issue of whether the ban should be imposed. (PPFOF ¶ 39.) The ban was issued with no expiration date, and through the ban, Defendant Innis intended to convey to Plaintiff Hannemann that any entry by Plaintiff Hannemann upon any property of the Defendant District would be considered trespass and be prosecuted. (PPFOF ¶¶ 40-41.)

Plaintiff Hannemann, since this ban was issued, has been banned from even public events on campus. (PPFOF ¶ 42.)

The Defendant School District's normal policy on allowing non-students to come onto school grounds and use school facilities is that people who are loitering and not on school grounds for any specific purpose can be told to leave the property, because loitering without a purpose, such to attend a school activity, can cause safety concerns. (PPFOF ¶ 46.) The school implements this policy by making sure that people have a purpose for being on campus, and that they are not there for no reason at all. (PPFOF ¶ 46.) The Hannemanns hired an attorney who attempted to have the District reconsider the ban, but the District never responded to the Hannemanns' attorney. (PPFOF ¶¶ 43-44.) Information about the ban was provided to local law enforcement, and Plaintiff Hannemann was cited for trespassing on June 4, 2008, for driving across the high school's parking lot to pick up friends after school. (PPFOF ¶ 45.) The ban denying Plaintiff Hannemann access to school grounds for any purpose is still in effect today. (PPFOF ¶ 47.)

## LEGAL ANALYSIS

### I.     Standard Of Review.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with the Declarations, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

8

(1986). A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating a motion for summary judgment, the Court must draw all inferences in favor of the nonmoving party. Id. at 587.

### A. The Defendants bear the burden of clearly explaining the basis of their motion.

"[A] party seeking summary judgment always bears the initial responsibility of *informing the district court of the basis for its motion,* and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. at 323. (emphasis supplied). The moving party's burden to clearly identify those grounds upon which it asks the Court to enter summary judgment is important. A plaintiff cannot be expected to respond to arguments that are not made or to support allegations in the complaint that are not attacked on summary judgment.

In particular, as discussed below, the Defendants do not meaningfully argue for the dismissal of Paragraph 5501 or Paragraph 5504 of the First Amendment Complaint (Dkt. 25), Plaintiff Hannemann's claims that the suspension violated his procedural due process rights and that his right to freedom of intrastate travel was violated when the Defendants banned him from school grounds at all times. These perfunctory and

undeveloped arguments and arguments unsupported by pertinent authority are waived, even if they raise constitutional issues. *Schulten v. Astrue*, 2010 WL 2135474, 1 (N.D. Ill); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991); *U.S. v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009).

> **B.    The Defendants fail to cite to any proposed facts in their brief, and therefore no facts from their brief should be considered.**

Eastern District Local Rule 56(b)(c) provides that "[a]ssertions of fact in the parties' supporting memoranda must refer to the corresponding numbered paragraph of the statement of facts, statement of additional facts, or statement of stipulated facts." The Defendants did not cite to a single proposed fact in their brief, and therefore, none of those facts should be considered. A "party's failure to comply with summary judgment evidentiary requirements is traditionally remedied…by excluding the non-conforming submission." *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003); *see also DiMa Corp. v. The Town of Hallie, WI*, 60 F.Supp.2d 918, 920 (W.D.Wis. 1998) ("All 'factual assertions made in a summary judgment brief must cite to a proposed finding of fact which itself rests on a citation to evidence in the record…The factual assertions in plaintiffs earlier memorandum do not rest on such citations. They will be disregarded. Similarly, plaintiffs response brief includes several facts not the subject of proposed findings of fact. These too will be disregarded.")

**C.    The Defendants improperly proposed findings of fact
which were based on a lay-witness's testimony as to
legal conclusions.**

The Defendants rely in part on Plaintiff Hannemann's testimony as to the law
and in response to deposition questions asking him, as a lay person, to draw legal
conclusions.  (*See e.g.,* Plaintiff's Responses to DPFOF ¶¶ 66, 70, 71, 72.)  However,
arguments that call for "a lay-witness to make a legal conclusion" are
"unpersuasive," because such arguments expect the lay-witness to know legal
definitions of words and understand what facts would fit within such a definition.
*Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 713 (N.D.Ind. 2009).  "Lay witnesses are not
required, or even permitted to testify about questions of  law," and "lay legal
conclusions are inadmissible into evidence."  *Id. citing Thomas v. Ragland*, 324 F.Supp.2d
950, 966 (W.D.Wis. 2004); *Christiansen v. Nat'l Sav. And Trust Co.*, 683 F.2d 520, 529
(D.C.Cir. 1982).  "[L]aypersons' assessments on a question of law are hardly dispositive
of an issue affecting their claims, let alone binding on [the] court."  *Id. citing Van
Jelgerhuis v. Mercury Fin. Co.*, 940 F. Supp. 1344, 1360 (S.D.Ind. 1996).  This should be
especially true when the lay witness is a 19 year old (PPFOF ¶ 4) testifying to matters
occurring when he was a minor (PPFOF ¶ 5) and his father was the ultimate
decisionmaker as to the matters surrounding the testimony (PPFOF ¶ 30).

**D. The Defendants may not introduce any new facts or arguments in their reply brief.**

"It is well settled that issues raised for the first time in a reply brief are waived." *Nelson v. La Crosse County District Atty*, 301 F.3d 820, 836 (7th Cir. 2002), *citing James v. Sheahan*, 137 F.3d 1002, 1008 (7th Cir. 1998). Additionally, "[a]rguments made for the first time in a reply brief are waived." *U.S. v. Adamson*, 441 F.3d 513, 521, f.2 (7th Cir. 2006). Arguments or facts raised for the first time in a reply brief are considered waived. *United States v. Adamson*, 441 F.3d 513, 521 n. 2 (7th Cir.2006); *Peters v. Astrazeneca, LP*, 417 F.Supp.2d 1051, 1054 (W.D.Wis.2006); *Michaels v. Mr. Heater, Inc.*, 411 F.Supp.2d 992, 995-96 (W.D.Wis.2006). *See also*, *Elborough v. Evansville Community School Dist.*, 636 F.Supp.2d 812, 816 (W.D.Wis. 2009) ("In accordance with circuit law and this court's summary judgment procedures, I have not considered any evidence or argument submitted for the first time with the reply brief or any facts included in a brief but not in the proposed findings of fact.")

**II. The Defendants' only arguments as to the suspension not violating Plaintiff Hannemann's due process rights are irrelevant.**

The Defendants make two irrelevant arguments in the "suspension" section of their brief, and neither require attention by the Court. (Defendants' Brief, pp. 20-22.)

The Defendants first argue about "[r]eview and revision of a school suspension on *substantive due process grounds*…[in cases] where there was no rational relationship between the punishment and the offense." (emphasis added.) These arguments need

12

not be considered because in his Complaint, ¶¶5501-5503, Plaintiff Hannemann alleges

only violations of *procedural due process*. (Dkt. 25.)  There can be a protected liberty

interest in not being banned from public property, despite there being no

corresponding fundamental substantive due process interest.  *Anthony v. State of Texas*,

209 S.W.3d 296 (Tex. App. 2006) (finding a procedural due process violation).

Next, the Defendants argue that "federal courts should not ordinarily intervene

in the resolution of conflicts which arise in the daily operation of school systems."

However, federal courts clearly intervene when constitutional questions arise within

disciplinary actions taken by schools.  *See e.g., Keller v. Fochs*, 385 F.Supp. 262 (E.D. Wis.

1974).  Even if the District has a legitimate interest in punishing Plaintiff Hannemann, it

still must abide by the constraints of due process.  *Id*. at 266.  Hence, the Defendants'

vague argument that the federal courts should stay out of it, so to speak, has no teeth.

Because the Defendants do not make any meaningful arguments that the

suspension did not violate Plaintiff Hannemann's Due Process Rights, this claim should

not be dismissed on summary judgment.


### III.    The Defendants do not meaningfully argue that the expulsion and ban did not violate Plaintiff Hannemann's right to intrastate travel.

The *only* thing the Defendant's state regarding Plaintiff Hannemann's claim that

his right to freedom of intrastate travel was violated when he was banned from school

property without any prior notice or hearing is that, "Although Hannemann alleges

that his alleged ban from District grounds violates his First Amendment right to intrastate travel… "members of the public have no constitutional right of access to public schools as a matter of law." *Vukadinovich v. Bd. Of School Trustees of Michigan City Area Schools*, 978 F.2d 403, 709 (7th Cir. 1992)." (Defendants' Brief, p. 14.)

This is not a meaningful argument against Plaintiff Hannemann's procedural due process claim as to intrastate travel. First, as explained in the next section, Plaintiff Hannemann had a liberty interest in access to school. Second, regardless, members of the public clearly have the right to intrastate travel on public property. *City of Chicago v. Morales*, 527 U.S. 41, 53-54, 119 S.Ct. 1849 (1999) ("the freedom to loiter for innocent purposes is part of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment. We have expressly identified this "right to move from one place to another according to inclination" as "an attribute of personal liberty" protected by the Constitution. *Williams v. Fears,* 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900); see also *Papachristou v. Jacksonville,* 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage" *Kent v. Dulles,* 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), or the right to move "to whatsoever place one's own inclination may direct" identified in Blackstone's Commentaries. 1 W. Blackstone, Commentaries on the Laws of England 130 (1765).")

In any event, the Defendants' perfunctory and undeveloped arguments and arguments unsupported by pertinent authority are waived, even if though they raise

constitutional issues regarding intrastate travel. *Schulten v. Astrue*, 2010 WL 2135474, 1 (N.D. Ill); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991); *U.S. v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009).

IV.   **The Defendants argue that Plaintiff Hannemann did not have a constitutional right to access school grounds, but only cite case law regarding mere "members of the public."**

The Defendants cite *Vukadinovich v. Bd. of School Trustees of Michigan City Area Schools*, 978 F.2d 403, 409 (7th Cir. 1992) for the proposition that "members of the public have no constitutional right of access to public schools" as a matter of law.

A.   **Plaintiff Hannemann, as a student, had a constitutional right to access school grounds.**

The Defendants do not cite case law that states that a student like Plaintiff Hannemann does not have a constitutional right to access school grounds. ( *See* Plaintiff's Responses to DPFOF ¶ 1 (2005-2006 school year); ¶ 17 (2006-2007 school year). In fact, The Defendants even admit later in their brief that, "it is true that a student has protected interests in a state provided public education, *Goss v. Lopez* 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)."

Plaintiff Hannemann was not a mere "member of the public," but was a minor student attending high school in the Defendant District, and therefore had a property interest in continued education. (PPFOF ¶¶ 4-5; Plaintiff's Responses to DPFOF ¶ 1.) "Children in Wisconsin have a right to free public education until the age of 20."

15

*Remer v. Burlington Area School Dist.*, 286 F.3d 1007, 1010 (7th Cir. 2002), *citing* Wis. Const. Art. 10 § 3. Wis. Admin. Code PI 8.01(2)(L)(6) requires that each school district provide free education to students in grades 9 through 12. Wis. Stat. § 121.02(L)(3) requires each school board to provide, in grades 9 to 12, access to a education program that enables the student to study English, social studies, math, science, vocational education, foreign language, physical education, art, and music. In fact, Wis. Stat. § 118.15 compels persons between 6 and 18 years of age to attend school regularly. Hence, on the basis of state law, Plaintiff Hannemann plainly had a legitimate claim of entitlement to a public education. *See e.g. Goss v. Lopez*, 419 US 565, 573, 95 S.Ct. 729 (1975).

"Having chosen to extend the right to an education to people of [Hannemann's] class generally, [Wisconsin] may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred…[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729 (1975). School discipline such as exclusions from school based on misconduct, "[i]f sustained and recorded, [ ] could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and

16

employment," which is a deprivation of a student' liberty interest.  *Id.* at 574-575.

### B.    Plaintiff Hannemann had a continued liberty interest in access to school grounds after his expulsion was reversed by the State Superintendent.

*Vukadinovich* was a First Amendment case which held that a public school is not a public forum for speech *unless school authorities have opened the school up for indiscriminate use by the general public by policy or practice*, and "[w]here a school is not made a public forum, the public is not invited to use its facilities as a soapbox.  In fact, the public is not invited in, period."  978 F.2d 403, 409.  (internal quotation marks and citations omitted; emphasis added.)  It is in this context that the court stated that, "Once the Board discharged Vukadinovich, he became a member of the public.  Members of the public have no constitutional right of access to public schools."[1]  *Id.*  In the case at bar, the District's policy and practice is to only prohibit persons from its grounds who are there for no reason at all; people are allowed on school grounds as long as they have a purpose, such as attending a school activity.  (PPFOF ¶ 46.)  Hence, in the context of the case at bar, the District *does* allow non-students to use its campus as long as those persons are there for a specific purpose and not loitering for no reason.  (PPFOF ¶ 46.)

The Defendants also cite *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999), where

---

[1]  The *Vukadinovich* case went on to discuss due process issues regarding Vukadinovich's property interest in his employment within the public school, and the fact that he had a property interest in his employment within the public school was conceded by the defendants.  *Id.* at 410.

17

the court held, again in a First Amendment context, that the Constitution did not provide a parent with unfettered or "boundless access to school property." However, Plaintiff Hannemann's access is not being limited, controlled, or supervised by the District; Plaintiff Hannemann's access is being completely cut off, permanently. (PPFOF ¶¶ 35-42; Plaintiff's Responses to DPFOF ¶ 67.) Plaintiff Hannemann is unable to step on school grounds for *any reason*, to attend a public event such as a game or school play, or even to drive on the parking lot, without exiting his car, to pick up his friends. (PPFOF ¶ 35-42, 45.)

The Defendants also cite *Henley v. Octorara Area School District*, 701 F.Supp. 545 (E.D.Pa. 1988), which held that:

> In this case, the school authorities had the right to exclude Mr. Henley and Mr. Thompson from coming onto the school property, considering that these men had engaged in criminal activities involving school students including a criminal conspiracy with Octorara Area High School students. Certainly the classification excluding Mr. Henley and Mr. Thompson had a rational basis and was reasonable. The right to come onto the school property was not such a right as to require any sort of a due process hearing before making the classification that excluded Mr. Henley.

*Id*. at 551. The court found that the private interest in being able to attend athletic events on school district property is "relatively small." *Id*. However, the court explained that the plaintiff had not been banned from school district property until *after* school administrators investigated the incident and *after* the plaintiff's father was given an opportunity to explain his son's side of the story.[2] *Id*. The court found that,

---

[2] Thus, the opportunity that was afforded strongly resembles the pre-deprivation opportunity to be heard, which does not entail a requirement for any formal proceedings, recognized in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.

"Imposing any greater procedural or administrative burdens on the defendants *before banning a non-student* would be fiscally and administratively burdensome. Also, it would undermine the ability of school officials to take prompt action to protect the student body from harmful and disruptive behavior by non-students." *Id*. (emphasis added.) In the case at bar, at least for the majority of the analysis Plaintiff Hannemann was a student, not a non-student, who, as discussed immediately below, had a liberty interest in access to the school. Moreover, when Plaintiff Hannemann was banned, he was not given an opportunity to explain his side of the story, as those in *Henley* had. (PPFOF ¶ 39.) Perhaps the District did not owe Plaintiff Hannemann any sort of traditional, court-like hearing prior to banning him from the schools' grounds. But, even in the cases from other jurisdictions cited by the Defendants, it is clear that the miniscule burden of investigation and opportunity for an informal explanation is minimally necessary to comport with due process, even if nothing more is necessary. *Id*.

Moreover, the State Superintendent's decision and order, finding that Plaintiff Hannemann's expulsion had been without due process and therefore must be reversed (PPFOF ¶ 28) was rendered totally meaningless when the defendants circumvented it by imposing a lifetime ban (PPFOF ¶ 40). In this case, the District deprived Plaintiff Hannemann of his liberty interest in access to school grounds without due process of law (PPFOF ¶ 28), and when the State Superintendent attempted to correct this wrong by reversing the District's expulsion of Plaintiff Hannemann, the District, again,

---

532 (1985).

without *any* (let alone proper) notice or right to be heard, simply banned him for life (PPFOF ¶¶ 38-40).

## V. Plaintiff Hannemann's liberty interests were implicated by his suspension, expulsion, and ban.

The Defendants argue that Plaintiff Hannemann cannot complain of being deprived of a basic education because despite "his suspension and subsequent expulsion, Hannemann's education continued. In fact, he completed his studies by the end of the school year,"[3] citing *Nevares v. San Marcos Consol. Independent School Dist.*, 111 F.3d 25, 26-27 (5th Cir. 1997). (Defendant's Brief, p. 19.)

Even if these uncited facts are to be considered, *Nevares* simply provided that the plaintiff was not being denied access to public education when he was transferred from one school program to another program with stricter discipline, which was still maintained by Texas schools. *Id.* At least in the Fifth Circuit, "no protected property interest is implicated in a school's denial to offer a student a particular curriculum." *Id.*

Clearly, in the case at bar, the Court is not considering an adjusted curriculum or a transfer, it is considering a suspension, and expulsion, and a ban. (Plaintiff's Responses to DPFOF ¶¶ 12, 14, 67-68.) The *Nevares* court itself pointed out that the "Supreme Court has held that the suspension from school without some kind of notice and hearing may violate property and liberty interests." *Id.* This simply was not the

---

[3] As discussed above, this fact should not be considered because the Defendants did not cite to any proposed findings of fact to support these assertions.

issue in the *Nevares* case, as the student was not suspended, but merely moved to a stricter program. *Id.*

The Defendants then cite *Niles v. University Interscholastic League*, 715 F.2d 1027, 1031 (5th Cir. 1983) for the proposition that "the Constitution's due process guarantees do not protect a student's interests in participating in extracurricular activities." However, the Defendants also cite *Henley v. Octorara Area School District*, 701 F.Supp. 545, 551 (E.D.Pa.1988), which found that a person has at least a small liberty interest in school athletics. More importantly, *Butler v. Oak Creek-Franklin School Dist.*, 116 F.Supp.2d 1038, 1050 (E.D.Wis. 2000), found that the "private interest" in the "opportunity to participate in high school extracurricular activities" "is far from minimal."

Moreover, Plaintiff Hannemann has been banned for life from school grounds for *any* purpose - not just a certain curriculum, not just athletic or extracurricular activities. (PPFOF ¶ .) These may be the things that interested Plaintiff Hannemann the most at the time, given his young age. However, Plaintiff Hannemann, in 20 years from now, could have a significant desire to watch his future children graduate from high school and attend other school events. It is every conceivable activity on school grounds which Plaintiff Hannemann is currently and forever banned from.

## VI. There are no constitutionally adequate post-deprivation remedies for an expulsion or a ban.

The defendants correctly point out that, "To show a failure of due process, a

21

plaintiff might show that state procedures as written do not supply basic due process or that state officials acted in a 'random and unauthorized' fashion in depriving the plaintiff of his protected interest." *Strasburger v. Board of Educ., Hardin County Community Unit School Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998). (citation omitted.) "[O]ne who challenges state action as 'random and unauthorized' must also demonstrate that state post-deprivation remedies do not satisfy due process…State law remedies in theory can satisfy due process as well as federal ones, so we require plaintiffs seeking federal remedies to show the state's remedies lacking." *Id*.

 The Defendants allege that Plaintiff Hannemann's claims revolve around random and unauthorized acts which can be effectively cured by a post-deprivation hearing. However, the acts of expulsion and ban were not "random and unauthorized," but were official school policy (PPFOF ¶¶ 22, 41.) The acts were taken by Mr. Innis, School District Superintendent, with final policymaking authority, and ratified by the School Board. (PPFOF ¶¶ 8, 22-23, 41; Plaintiff's Responses to DPFOF ¶ 39.) Moreover, there is no conceivable reason why Mr. Innis would lie to Attorney Kase and deprive the Hannemanns the opportunity to be heard prior to the re-expulsion, making the denial of the opportunity to be heard more unreasonable. (PPFOF ¶¶ 14-18.) For these reasons, even if Plaintiff Hannemann had access to post-deprivation state administrative remedies, and even if those procedures eventually resulted in Plaintiff Hannemann's ability to reinstate himself as a student in the District, it does not vitiate Hannemann's § 1983 claim for violation of his constitutional right to procedural due process. *Farley v. north Bergen*

22

*Tp. Bd. Of Educ.*, 705 F.Supp. 223, 227 (D.N.J. 1989). As such, Hannemann "can recover compensable damages sustained in the period between his transfer and the time of his reinstatement." *Id., citing Endicott v. Huddleston*, 644 F.2d 1208, 1216 (7th Cir. 1980).

Furthermore, even if these acts of expulsion and banning were "random and unauthorized," they could not be cured by the post-deprivation procedures in Wis. Stat. § 120.13. A post-deprivation hearing is lacking, and insufficient to save inadequate procedures at the school level, if the proceeding is not de novo or if delay will attend any proceeding (which is assumed without a demonstration to the contrary) and "the student meanwhile will irreparably lose his educational benefits." *Goss v. Lopez*, 419 U.S. 565, f.10. *See also Carder v. Michigan City School Corp.*, 52 F.Supp. 869, 873 (D.C.Ind. 1982) ("When the plaintiffs were denied access to the school system, the harm to them was already done. No additional procedures provided by the defendants could undo that fact. The rationale behind the cases cited by the defendants only applies where use of available state procedures would obviate the harm.")

The Defendants argue that "Wis. Stat. § 120.13(1) provides for an extensive procedural remedy for rule enforcement as it pertains to discipline, including expulsion, which Hannemann used successfully."[4] Wis. Stat. § 120.13(1)(c)(3) does provide for a post-deprivation procedure when a student is *suspended*, and Wis. Stat. § 120.13(1)(e)(3) provides both pre and post-deprivation procedures for *expulsion*, however, Wis. Stat. §

---

[4] Again, as argued above, the fact asserted that "Hannemann used [this procedure] successfully" should be disregarded as uncited.

120.13 does not provide any post-deprivation remedy for a total *ban*. Hence, the Defendants have provided no showing that there was some sort of post-deprivation remedy available to Plaintiff Hannemann after he was banned.

Moreover, as to the expulsions, the Defendants have not demonstrated that the post-deprivation remedy provided by Wis. Stat. § 120.13(1)(e)(3) will not be attended with delay, and so the Court assumes that is the case, which makes the post-deprivation remedy constitutionally insufficient. *Goss v. Lopez*, 419 U.S. 565, f.10. In any event, as provided in Wis. Stat. § 120.13(1)(e)(3), the state superintendent has 60 days from the date he or she receives the appeal to make a decision, and the "decision of the school board shall be enforced while the state superintendent reviews the decision." In Wisconsin, schools are in session for 180 days per term. Wis. Stat. 120.12(15). Hence, 33% or more of the school year passes by during the appeal, and "the student meanwhile [ ] irreparably lose[s] his educational benefits," which is constitutionally inadequate. *Goss v. Lopez*, 419 U.S. 565, f.10. Additionally, the post-deprivation remedy is inadequate because it does not provide for *de novo* review. *Id.* Pursuant to Wis. Adm. Code § PI 1.04(5), the state superintendent's review is confined to a review of the record of the school board hearing. The state superintendent's review is further limited by Wis. Stat. § 120.13(1)(c) to a review that merely insures "that the school board followed the procedural mandates of subsection (c) concerning notice, right to counsel…" and keeping written records. *Racine Unified School Dist. v. Thompson*, 107 Wis. 2d 657, 667, 321 N.W.2d 334 (Wis. App. 1982). Finally, as to the May, 2007, expulsion, the Defendants themselves note that Hannemann did not have the right to a post-

24

deprivation school board hearing on the May, 2007, re-expulsion.  (Plaintiff's Responses to DPFOF ¶ 50.)

### VII.    The District is an Appropriate Defendant.

The Defendants argue that Plaintiff Hannemann's claims against the District should be dismissed under *Monell* and progeny, though the Defendants note that there can be liability when a constitutional deprivation is "caused by a decision of a municipal policymaker with final policymaking authority."   *See also, Bloodworth v. Village of Greendale*, 2011 WL 98835, 4 (E.D.Wis. 2011).

First, it is both appropriate under the law and efficient to have the District as a named defendant for no other reason than its duty to indemnify under Wis. Stat. § 895.46.  *See Estate of Watts v. Heine*, 2008 WL 4058032 (E.D.Wis. 2008).

Second, Plaintiff Hannemann's expulsions and ban were carried out pursuant to official policy and were carried out and/or ratified by the person with final policymaking authority, Defendant Innis.

Mr. Innis is the School District Superintendent.  (PPFOF ¶ 1.)  He reviews all decisions of administration regarding Plaintiff Hannemann's status as a student.  (PPFOF ¶ 2.)  When Plaintiff Hannemann was expelled, he was expelled pursuant to District policy.  (PPFOF ¶¶ 22-23.)  Even the Defendants acknowledge that Plaintiff Hannemann's expulsion was made with full consensus of the School Board and that the administrations' decision to expel Plaintiff Hannemann was appropriate.  (Plaintiff's Responses to DPFOF ¶ 39.)  Superintendent Innis made the decision that Plaintiff

Hannemann's re-expulsion was going to remain in effect and that he was going to be indefinitely banned from school property. (PPFOF ¶¶ 23, 40-41.)

Superintendent Innis has final policymaking authority. "A court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 784-85, 117 S.Ct. 1734 (1997). (citation omitted.) The courts look as to whether governmental officials are final policymakers "in a particular area, or on a particular issue," looking to provisions of state law that define an agency's character. *Id*. at 785; *see also Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 738, 109 S.Ct. 2702 (1989) (considering whether school district superintendent possessed final policymaking authority in the area of employee transfers).

The Defendants themselves note that the District administration had final policymaking authority in regards to the expulsion order. (Plaintiff's Response to DPFOF ¶ 40.) In Wisconsin, superintendents are persons "of suitable learning and experience in the art of instruction and shall have practical familiarity with the most approved methods of organizing and conducting a system of schools," and are elected by the Board. Wis. Stat. § 119.32(1). Superintendents of schools have general supervision over broad aspects of school administration including supervision of the principals and other administrative employees and acting as an advisory member of every committee of the board (excepting a committee looking into the

26

superintendent's own acts). Wis. Stat. § 119.32(2). Superintendents, and those they specifically designate, have final policymaking authority regarding expulsions. Wis. Stat. § 119.25.

Hence, the District is an appropriate defendant because the acts which violated Plaintiff Hannemann's due process rights were taken pursuant to the District's formal policy, and additionally taken and ratified by Superintendent Innis, who had final policymaking authority.

### VIII. Qualified Immunity Does Not Bar Any Individual Capacity Claims.

"Under the qualified immunity analysis, an official performing discretionary functions is immune from suit if her conduct could reasonably have been thought consistent with the rights she is alleged to have violated." *Michael C. v. Gresbach*, 526 F.3d 1008, 1013 (7th Cir. 2008). The court looks as to (1) whether, taken in the light most favorable to the plaintiffs, the facts show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established, or in other words, the contours of the right was sufficiently clear that a reasonable official would understand that what she is doing violates that right. *Id*. "A general constitutional rule already identified may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Id*. at 1017. "Determining the reasonableness of a 'mistake' does not necessitate comparison to a precedent that squares in every detail with the present

case." *Baird v. Board of Educ. for Warren Community Unit School Dist. No. 205*, 389 F.3d 685, 696 (7th Cir. 2004). In *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992 (1975), the Court stated that "in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under s 1983 if he knew or reasonably should have known that the action he took within his sphere official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student."

As described above, the facts show that the official's conduct violated Plaintiff Hannemann's due process rights, and a student's right to due process in an expulsion/ban were clearly established at the time. "Children in Wisconsin have a right to free public education until the age of 20." *Remer v. Burlington Area School Dist.*, 286 F.3d 1007, 1010 (7th Cir. 2002), *citing* Wis. Const. Art. 10 § 3. "Having provided for the right to education, Wisconsin may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." *Id.* (internal quotation marks and citation omitted.) The Seventh Circuit has held that:

> To comport with due process, expulsion procedures must provide the student with a meaningful opportunity to be heard. *Linwood v. Bd. of Educ.*, 463 F.2d 763, 769-70 (7th Cir.1972). The proceedings need not, however, "take the form of a judicial or quasi-judicial trial." *Id.* at 770. As long as the student is given notice of the charges against him, notice of the time of the hearing and a full opportunity to be heard, the expulsion procedures do not offend due process requirements. *Betts v. Bd. of Educ.*, 466 F.2d 629, 633 (7th Cir.1972).

28

*Id*. at 1010-1011.  Moreover, the Supreme Court has stated that, "There can be no doubt that at minimum [due process] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id*. at *Goss v. Lopez*, 419 U.S. 565, 578.  The fundamental requisite is the opportunity to be heard, and that right "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to contest." *Id*. (citation omitted.)  "At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Id*.  Stemming as far back as at least 1974, *Keller v. Fochs*, 385 F.Supp. 262, 266 (D.C.Wis. 1974), held that it was unconstitutional as incompatible with due process to provide vague notice such as "your son…continues to conduct himself in an irresponsible and disruptive manner" and "he has been deliberately defiant of reasonable request by teachers…on three occasions within the past few weeks" without more.  In this case, as to first expulsion, Plaintiff Hannemann was not afforded the necessary notice in violation of his due process rights, as already found by the State Superintendent.  (PPFOF ¶ 28.)  As to the second, or re-expulsion, Plaintiff Hannemann was only notified that he had been expelled for having further incidents of "gross misconduct" without further specificity.  (PPFOF ¶¶ 25-26.)  This is clearly insufficient notice under *Keller*.  As to the lifetime ban, Plaintiff Hannemann was notified that his presence in the weight room was the reason for the ban at the time of the ban, but not beforehand, and he was given no opportunity

29

whatsoever to explain his side of the story.   (PPFOF ¶¶ 38-39.)  This is clearly insufficient under *Goss* and *Remer*.  Because the individual Defendants violated Plaintiff Hannemann's constitutional rights which were clearly established at the time, qualified immunity does not exist.

### IX.     Qualified Immunity is not a Defense to Claims for Injunctive Relief.

Qualified immunity is immunity only from damages liability; it is not immunity from injunctive relief.  *Harlow v. Fitzgerald*, 457 U.S. 800, 819 n. 34 (1982), expressly reserved ruling on the applicability of the defense of qualified immunity to claims for equitable relief. Since then courts have uniformly held that qualified immunity shields governmental defendants only from liability for damages and does not bar an action for declaratory or prospective injunctive relief. *Supreme Video v. Schauz*, 15 F.3d 1345 (7th Cir. 1994); *Fry v. Melaragno*, 939 F.2d 832 (8th Cir. 1991); *American Fire, Theft and Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991); *Cagle v. Gilley*, 957 F.2d 1347 (6th Cir. 1992).

Accordingly, even if the Plaintiff's damages claims, or some of them, are dismissed on the basis of qualified immunity, the Court should deny the Motion for Summary Judgment as far as injunctive relief against the lifelong ban, or equitable relief concerning the state of the Plaintiff's student records, may be concerned.

30

## Conclusion

In conclusion, Plaintiff Hannemann respectfully requests that the Defendants' Motion for Summary Judgment be denied in its entirety.

Dated this Monday, February 21, 2011.

Respectfully submitted,

Derek Hannemann, Plaintiff,

By

THE JEFF SCOTT OLSON LAW FIRM, S.C.
JEFF SCOTT OLSON
State Bar No. 1016284
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone:                (608) 283-6001
Facsimile:            (608) 283-0945
E-mail:               jsolson@scofflaw.com

/s/ Jeff Scott Olson

_____

JEFF SCOTT OLSON

ATTORNEYS FOR PLAINTIFF

---

**Certificate of Service**

I hereby certify that on Monday, February 21, 2011, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Michele M. Ford, Counsel for the Defendants, and I hereby certify that I have mailed by United States Postal Service

---

31

the document to the following non ECF participants: none.

/s/ Jeff Scott Olson_____